## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE GAMING
COMMISSION,

                    Plaintiff,

        v.


PETER ARTEMIEV; ANABELLE ECKERT;
BRIAN WOOD EXCLUSIVE, INC.,


                    Defendants.

Civil Action No:  **1:22-cv-1140 (DNH/DJS)**



**JURY TRIAL DEMANDED**

### COMPLAINT

Plaintiff, New York State Gaming Commission (hereinafter "Plaintiff"), as and for its Complaint against Defendants Peter Artemiev, Anabelle Eckert, and Brian Wood Exclusive, Inc. (hereinafter, collectively "Defendants"), alleges the following:

### PARTIES

1.      Plaintiff, New York State Gaming Commission, is a New York State agency organized by statute and existing under the laws of the State of New York, having its principal place of business at One Broadway Center, Schenectady, New York 12305.

2.      Upon information and belief, Defendant, Peter Artemiev, is an individual, residing at 1224 St. Nicholas Avenue - Suite 1F, New York, New York 10032 and may be connected to or

associated with 2942 W. 5th Street 7R, Brooklyn, New York 11224 from which infringing merchandise was shipped.

3.      Upon information and belief, Defendant, Anabelle Eckert, is an individual, residing at 1224 St. Nicholas Avenue - Suite 1F, New York, New York 10032 and may be connected to or associated with 2942 W. 5th Street 7R, Brooklyn, New York 11224 from which infringing merchandise was shipped. According to the United States Patent and Trademark Office records, Anabelle Eckert is also associated with Worldwide Brand Solutions with an address at 230 Clinton Street - Suite 11C, New York, New York 10002.

4.      Upon information and belief, Defendant Brian Wood Exclusive, Inc. is a corporation duly organized and existing under the law of the State of New York, having its principal place of business at 147 Orchard Street, Ground Floor Level, New York, New York 10002.  Brian Wood Exclusive, Inc. may be connected to or associated with 2942 W. 5th Street 7R, Brooklyn, New York 11224 from which infringing merchandise was shipped.

## JURISDICTION AND VENUE

5.      This is an action for trademark infringement and trademark dilution under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; and related New York statutory and common-law claims of deceptive acts and practices and unfair competition.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367 and 15 U.S.C. §§ 1116 and 1121.

7.      This Court has personal jurisdiction over the Defendants under New York CPLR §§ 302(a)(1), (a)(2), (a)(3)(i) and/or (a)(3)(ii) by virtue of each transacting and doing business in

the State of New York and the Northern District of New York, including selling and/or shipping infringing merchandise in this judicial district, and by each having committed tortious acts within and outside of the State causing injury to Plaintiff within the State of New York and the Northern District of New York.

8.      Venue is proper in the Northern District of New York based upon 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to these claims occurred in this judicial district.

## **BACKGROUND**

9.      Plaintiff is a New York State agency organized by statute that regulates all aspects of legalized gaming activity in the State of New York and operates the New York Lottery.

10.     Article I, section 9(1) of the New York Constitution gives New York State the exclusive right to operate lotteries in the state and provides the net proceeds of the sale of lottery tickets shall be applied exclusively to or in aid or support of education in New York state, as the legislature may prescribe.

11.     From the inception of the New York Lottery in 1967 through the conclusion of the fiscal year that ended on March 31, 2022, the New York Lottery has earned $78.7 billion to support education statewide, including $3.6 billion in fiscal year 2021-22.

12.     Since at least as early as 1967, Plaintiff has been using the word mark "NEW YORK LOTTERY" for lottery services and in connection with the distribution and sale of lottery tickets and the distribution of merchandise (*e.g.*, clothing) ("Lottery Word Mark"). Thus, Plaintiff

has common-law trademark rights in the word mark "NEW YORK LOTTERY" based on its continuous and exclusive use of this mark for more than 55 years.

13.    Plaintiff's use of the Lottery Word Mark has been continuous and extensive since at least 1967 and predates the infringing acts by Defendants complained of herein.

14.    Plaintiff makes marketing and advertising efforts to support the sale of lottery tickets in order to advance the mission of earning revenue for education funding in New York state.

15.    Since 1993, Plaintiff has used a design mark in association with the offering of its lottery services and lotto game services depicted as follows:



(the "Lottery Globe Mark").  Plaintiff's ownership of the Lottery Globe Mark includes all potential colorations of the Lottery Globe Mark, including as follows:



16.     Plaintiff is the owner of U.S. Service Mark Registration No. 6,220,266 for the Lottery Globe Mark (the "Lottery Registration") covering "Lottery services and lotto game services" in International Class 041. The Lottery Registration was registered on December 15, 2020.   Attached to this Complaint as **Exhibit A** is a true and correct copy of the Lottery Registration.

17.     The Lottery Registration is *prima facie* evidence of the validity of the Lottery Globe Mark and Plaintiff's exclusive right to use the mark in commerce.

18.     Plaintiff's use of the Lottery Globe Mark has been continuous and extensive since 1993 and predates the infringing acts by Defendants complained of herein.

19.     Plaintiff has spent, and continues to spend, large sums of money in the promotion, advertisement, and sale of its goods and services under the Lottery Globe Mark and the Lottery Word Mark. And, by reason of such advertising and the high quality of its services and goods carrying such trademarks, Plaintiff enjoys valuable goodwill and an enviable reputation with respect to its trademarks and, in particular, the services and goods associated therewith in order to support education in New York state.

20.     The Lottery Word Mark and the Lottery Globe Mark, including the design aspects of the Lottery Globe Mark, have become famous in the eyes of the consuming public as a source identifier for Plaintiff and its lottery services, as well as its merchandise branded with the same, throughout the United States by virtue of its extensive promotion and significant number of travelers who come to New York. The Lottery Word Mark and the Lottery Globe Mark are displayed prominently at the more than 16,000 lottery sales agent locations throughout New York in connection with the sale of lottery services.

21.     In addition to lottery services and lotto game services, Plaintiff has used the Lottery Globe Mark and the Lottery Word Mark in connection with a wide variety of merchandise and promotional items sold and/or distributed to consumers to increase awareness and support of the New York Lottery. For example, Plaintiff has more than 70 current product SKUs branded with the Lottery Globe Mark and Lottery Word Mark that are distributed and/or sold to customers. These products include, for example, lottery tickets, t-shirts, long-sleeve shirts, sweatshirts, hats, recyclable bags, beach bags, sling bags, tumblers, cups, coolers, water bottles, lunch bags, eyeglass cloths, keychains, notebooks, flash drives, earbuds, lottery ticket scratchers, pens, cell phone card holders, styluses, beach towels, gloves and ice scrapers (collectively referred to herein as "Lottery Merchandise"). Some examples of this Lottery Merchandise are shown below:



22.     Plaintiff has distributed its Lottery Merchandise to consumers in a variety of ways across New York state. Through the years, Plaintiff has participated in hundreds of events and festivals across New York State selling lottery tickets and distributing its Lottery Merchandise, reaching millions of people. For example, Plaintiff has distributed and/or sold lottery tickets and Lottery Merchandise branded with the Lottery Globe Mark and the Lottery Word Mark at fairs, festivals, sporting and entertainment events and through social media and digital promotions.

23.     The Lottery Merchandise and other products distributed by Plaintiff with the Lottery Globe Mark and Lottery Word Mark have consistently been a part of Plaintiff's overall marketing strategy for decades. Plaintiff distributes the Lottery Merchandise and other products branded with the Lottery Globe Mark and Lottery Word Mark to promote its lottery services and support education in New York state. For example, Plaintiff achieves increased brand awareness when customers wear or use the Lottery Merchandise branded with the Lottery Globe Mark and Lottery Word Mark in public.

24.     Through the years, Plaintiff used actors and/or sports figures to perform in television spots and other promotions of Plaintiff's services using the Lottery Globe Mark and Lottery Word Mark.  For example, for the past three years, Plaintiff's sponsorship of the New York Mets baseball team has included appearance of two Mets' players in 30-second video spots produced by the SNY cable network.

25.     Quick Draw is a game offered by the New York Lottery. In the Quick Draw game, a player makes a selection or selections of a number or numbers from among a field of 80 numbers and can win prizes if a selected number or numbers match randomly selected winning numbers. *See generally* 9 NYCRR Part 5013. Since at least September 1995, Plaintiff has been using the word mark "QUICK DRAW" for lottery services and in connection with the distribution and sale of lottery tickets and the distribution of merchandise (*e.g.*, clothing) ("Quick Draw Word Mark"). Thus, Plaintiff has common-law trademark rights in the word mark "QUICK DRAW" based on its continuous and exclusive use of this mark for more than 27 years.  Plaintiff has applied to register the Quick Draw Word Mark with the United States Patent and Trademark Office for which the application has been assigned Serial No. 97/646,080.

26.     Plaintiff's use of the Quick Draw Word Mark has been continuous and extensive since at least 1995 and predates the infringing acts by Defendants complained of herein.

27.     Plaintiff makes marketing and advertising efforts to support the sale of Quick Draw lottery tickets in order to advance the mission of earning revenue for education funding in New York state.

28.     Since 1995, Plaintiff has used a design mark in association with the offering of its Quick Draw lottery services and lotto game services ("Quick Draw Logo") depicted as follows:



29.     Plaintiff's use of the Quick Draw Logo has been continuous and extensive since 1995 and predates the infringing acts by Defendants complained of herein.  Plaintiff has applied to register the Quick Draw Logo with the United States Patent and Trademark Office for which the application has been assigned Serial No. 97/646,081.

30.     Plaintiff has spent, and continues to spend, large sums of money in the promotion, advertisement, and sale of its goods and services under the Quick Draw Logo. And, by reason of such advertising and the high quality of its services and goods carrying such trademarks, Plaintiff enjoys valuable goodwill and an enviable reputation with respect to its trademarks and, in particular, the services and goods associated therewith in order to support education in New York state.

31.     The Quick Draw Word Mark and the Quick Draw Logo, including the design aspects of the Quick Draw Logo, have become famous in the eyes of the consuming public as a source identifier for Plaintiff and its lottery services, as well as its retail merchandising items branded with the same, throughout the United States by virtue of its extensive promotion and the significant number of travelers who come to New York. The Quick Draw Word Mark and the Quick Draw Logo are displayed prominently at approximately 7,020 lottery sales agent locations throughout New York that meet the Tax Law § 1612(a)(1) requirements to sell Quick Draw lottery tickets.  The Quick Draw Word Mark and Logo are also featured in multigame signage posted at approximately 14,000 sales agent locations across New York state.

32.     Plaintiff has used the Quick Draw Logo and the Quick Draw Word Mark in connection with a wide variety of point-of-sale ("POS") items and consumables used at retail to increase awareness and support of the New York Lottery, generate Quick Draw ticket sales, and aid education in New York state.  Examples of such use are depicted as follows:



33.    Plaintiff has distributed its Quick Draw POS items and consumables to sales agents across New York state to aid in the marketing and sale of Quick Draw tickets. Through the years, consumers frequenting these retail establishments have been exposed to Plaintiff's Quick Draw-branded items and have come to recognize the Quick Draw brand and its mark.

34.    The Quick Draw retail merchandising and distribution of items with the Quick Draw Logo and Quick Draw Word Mark have consistently been a part of Plaintiff's overall marketing strategy for decades. By distributing POS items branded with the Quick Draw Logo and Quick Draw Word Mark, Plaintiff increases brand awareness. Customers see Quick Draw signage or use coasters or napkins branded with the marks in public, and they may be more likely to purchase a Quick Draw ticket in support of education in New York state.

## **DEFENDANTS' UNLAWFUL CONDUCT**

35.      Upon investigation and information, Defendants advertise and sell products in this judicial district and elsewhere in interstate commerce that wrongfully use and trade on the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Logo and the Quick Draw Word Mark and the associated goodwill of Plaintiff.

36.      Defendants have engaged in multiple unauthorized and infringing uses of Plaintiff's federally registered Lottery Globe Mark and the Lottery Word Mark and the Quick Draw Logo and the Quick Draw Word Mark for profit and commercial purposes. Such unauthorizing and infringing uses tend to tarnish the Lottery Globe Mark, the Lottery Word Mark and Quick Draw Logo and the Quick Draw Word Mark, to the detriment of raising revenue for education in New York state through the sale of lottery tickets.

37.      On May 3, 2017, Defendant Peter Artemiev and Defendant Anabelle Eckert jointly filed a trademark application with the United States Patent and Trademark Office for the word mark NEW YORK ROBBERY directed to: "Headwear; Hoodies; Jackets; Jerseys; Sweaters; T-shirts; Caps being headwear; Crew neck sweaters; Short-sleeved or long-sleeved t-shirts; Skullies being headwear" in International Class 25. This application registered on November 21, 2017 as U.S. Trademark Registration No. 5,340,467.

38.      Defendants have advertised, offered for sale, and sold goods using the word mark NEW YORK ROBBERY and/or containing the following logo:



(the "Robbery Logo").

39.    The Robbery Logo shown above appears on Defendants' website, www.newyorkrobbery.com. As shown in the lower right-hand corner of the Robbery Logo, Defendants are improperly using the trademark registration symbol ® in connection with the Robbery Logo. Defendants do not have a U.S. Trademark Registration for the Robbery Logo, but Plaintiff has a U.S. Trademark Registration for the Lottery Globe Mark. Defendants' use of the trademark registration symbol with the Robbery Logo that is confusingly similar to the Lottery Globe Mark is considered a misuse and intended to deceive the purchasing public or others that the mark was registered and/or affiliated with, connection to or sponsored by Plaintiff.

40.    The Robbery Logo is virtually identical to and is highly likely to cause confusion with the Lottery Globe Mark and the Lottery Word Mark. The design elements, color scheme, and fonts used in the Robbery Logo are identical to the Lottery Globe Mark. The sole difference between the Robbery Logo and the Lottery Globe Mark is the use of the word "ROBBERY" in the Robbery Logo instead of "LOTTERY", which still contains the same number of letters, the same final three letters and rhymes.

41.     Defendants have advertised, offered for sale, and sold goods using the word mark NEW YORK ROBBERY, the word mark QUICK DRAW and/or containing the following logo ("Robbery Gun Logo"):



42.     Defendants' use of the Robbery Gun Logo that is confusingly similar to the Quick Draw Logo is considered a misuse and intended to deceive the purchasing public or others that the mark was registered and/or affiliated with, connection to or sponsored by Plaintiff.  The use of the Robbery Gun Logo also tarnishes the reputation and goodwill of the Quick Draw Logo by associating the Quick Draw Word Mark and Quick Draw Logo with gun violence.  The use of the Robbery Gun Logo using the Quick Draw Word Mark and Quick Draw Logo is a very sensitive issue in view of the recent school shootings throughout the United States given the New York Lottery's support of education in New York state.

43.     The Robbery Gun Logo is virtually identical to and is highly likely to cause confusion with the Quick Draw Logo and the Quick Draw Word Mark. The design elements and fonts used in the Robbery Gun Logo are identical to the Quick Draw Logo. The sole differences between the Robbery Gun Logo and the Quick Draw Logo are the use of the word "ROBBERY" in the Robbery Gun Logo instead of "LOTTERY", which still contains the same number of letters,

the same final three letters and rhymes, the addition of the silhouette of a gun in the Robbery Gun Logo.

44.     Defendants use the Robbery Logo and the Robbery Gun Logo to advertise and sell on its website clothing and other items for profit, such as, but not limited to, shirts, hats, sweatshirts, sweatpants, shorts, hoodies, keychains, bags, masks, rugs, stickers, and pins ("Robbery Merchandise"), including the following:





Copies of Defendants' website pages showing these, and other examples of, Defendants'
infringing use of Plaintiff's trademarks are provided in Exhibit **B**, attached hereto.

45.    Upon information and belief, Defendants' promotion and sale of the Robbery
Merchandise using the Robbery Logo and the Robbery Gun Logo have caused actual confusion to
the public.

46.    Defendants also use the Robbery Logo on fraudulent lottery tickets that have a
design and appearance that is virtually and confusingly identical to Plaintiff's authorized lottery
tickets ("Fraudulent Lottery Tickets"), including the fake ticket shown below:



47.    Defendants' Fraudulent Lottery Tickets are identical on the rear side to that of
Plaintiff's authorized lottery tickets, including the instruction to claim any prize "at a Lottery

Customer Service Center (see nylottery.gov for locations) or sign and mail to: New York lottery"
in Schenectady, New York.

48.     Defendants have distributed, promoted and/or sold the Fraudulent Lottery Tickets
in the United States.

49.     Defendants' distribution, promotion and/or sale of the Fraudulent Lottery Tickets
have caused actual confusion to the public, including but not limited to, one or more consumers of
Defendants' products inquiring about how to collect a prize from Plaintiff in connection with one
of Defendants' fraudulent lottery tickets.

50.     Upon investigation and information, Defendants' website located at
www.newyorkrobbery.com is owned and administered by Defendants solely for commercial
purposes. Upon investigation and information, Defendants registered the domain name
newyorkrobbery.com in approximately 2018.

51.     Upon investigation and information, Defendants regularly do and solicit business,
and derive substantial revenue from services provided to customers in New York state and this
judicial district.

52.     Upon investigation and information, Defendants derive substantial revenue from
interstate commerce from the sale of Robbery Merchandise and Fraudulent Lottery Tickets bearing
the infringing Robbery Logo, Robbery Gun Logo, and the NEW YORK ROBBERY mark.

**FIRST CAUSE OF ACTION**

**TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**

53.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 52 above.

54.     Plaintiff owns both common-law rights and the right to United States Registered Trademark No. 6,220,266 for the Lottery Globe Mark, and common-law rights for the Lottery Word Mark, the Quick Draw Word Mark and the Quick Draw Logo.

55.     Defendants have used in commerce, without Plaintiff's consent, reproductions, counterfeits, copies or colorable imitations of the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Word Mark and the Quick Draw Logo in connection with the sale, offer for sale, distribution and/or advertising of its products and services, including Fraudulent Lottery Tickets and the Robbery Merchandise.

56.     Defendants' unauthorized use of the Robbery Logo, the Robbery Gun Logo, and the word mark "NEW YORK ROBBERY" in its marketing and advertising of identical and related goods and services is likely to cause confusion or to cause mistake, or to deceive consumers as to the origin, sponsorship or approval of Defendants' products and services by Plaintiff and Plaintiff's products and services sold under the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Word Mark and the Quick Draw Logo, or is likely to cause consumers to believe that Defendant and Plaintiff, and their respective goods and services, are somehow affiliated, connected with, or associated sponsored by each other when, in fact, they are not.

57.     Defendants' activities created a likelihood that consumers will be confused as to source, sponsorship, and/or affiliation, or to cause mistake or to deceive.

58.     Defendants' infringement of the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Word Mark and the Quick Draw Logo are solely for commercial purposes and profit. In fact, Defendants' website, www.newyorkrobbery.com, is strictly used as an e-commerce website to promote and sell the Robbery Merchandise.

59.     Defendants' infringement of the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Word Mark and the Quick Draw Logo has been willful and deliberate for the purpose of misleading consumers and injuring the goodwill of Plaintiff.

60.     The actions of Defendants described in this Cause of Action constitute trademark infringement in violation of 15 U.S.C. § 1114. Defendants' actions have caused, and, unless enjoined by this Court, will continue to cause serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

61.     Plaintiff is being damaged by Defendants' conduct.

62.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants' infringement, an accounting of profits made by Defendants by their actions and recovery of Plaintiff's costs of this action.

63.     The acts of Defendants make this an exceptional case entitling Plaintiff to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
## TRADEMARK DILUTION UNDER THE LANHAM ACT

64.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 above.

65.    Plaintiff has extensively and continuously promoted and used the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Word Mark, and the Quick Draw Logo in the State of New York, and exposed such marks to visitors of New York from throughout the entire United States, and, as a result, these marks have thereby become famous and well-known symbols and trademarks of Plaintiff's goods and services.

66.    As a result of the continuous and substantial use of the Lottery Word Mark for more than 55 years, the Lottery Globe Mark for more than 28 years, the Quick Draw Word Mark for more than 27 years, and the Quick Draw Logo for more than 27 years, as well as significant amounts of advertising and sales, the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Word Mark and the Quick Draw Logo are famous trademarks within the meaning of § 43(c) of the Lanham Act, and such marks became famous before Defendants' use of the Robbery Logo, the Robbery Gun Logo and the NEW YORK ROBBERY mark in connection with its goods and/or services.

67.    Defendants are making commercial use in commerce of marks that dilute and are likely to dilute the distinctiveness of the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Word Mark and the Quick Draw Logo by eroding the public's exclusive identification of these famous marks with Plaintiff, tarnishing and degrading the positive associations and prestigious connotations of the marks, eroding public trust in Plaintiff's lottery services and otherwise lessening the capacity of the marks to identify and distinguish goods and services.

68.    Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive marks in violation of 15 U.S.C. § 1125(c).

## THIRD CAUSE OF ACTION

## TRADEMARK DILUTION UNDER N.Y. GEN. BUS. LAW § 360-l

69.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68 above.

70.     Plaintiff's Lottery Word Mark, Lottery Globe Mark, Quick Draw Word Mark and Quick Draw Logo are each strong marks due to their distinctive qualities, coupled with the continuous uninterrupted use of the same, for more than 55 years for the Lottery Word mark, 28 years for the Lottery Globe Mark and 27 years for the Quick Draw Word Mark and Quick Draw Logo. Each of these marks have become so associated in the public's mind with Plaintiff that they readily identify Plaintiff's goods and services as distinguished from those sold by others.

71.     Defendants' activities have created and continue to create a likelihood of injury to the public image and reputation of Plaintiff, and to dilute the distinctive quality of the Lottery Word Mark, the Lottery Globe Mark, the Quick Draw Work Mark and the Quick Draw Logo and all rights held thereunder, in violation of the General Business Law of the State of New York.

72.     Such conduct on the part of Defendants had caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

73.     Such conduct on the part of Defendants has caused and will continue to cause damages to Plaintiff in an amount to be determined.

74.     By reason of the foregoing, Defendants have violated and continue to violate New York General Business Law § 360-l.

## FOURTH CAUSE OF ACTION
## <u>COMMON-LAW TRADEMARK INFRINGEMENT</u>

75.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 above.

76.     Defendants' actions constitute trademark infringement in violation of Plaintiff's rights to the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Logo and the Quick Draw Word Mark under the common law of the State of New York. Said infringement has and continues to injure the goodwill of Plaintiff and its products and services.

77.     Plaintiff is entitled to damages for Defendants' infringement and an accounting of profits made by Defendants through their actions and recovery of Plaintiff's costs in this action.

78.     Plaintiff is being damaged by Defendants' conduct.

79.     The acts of Defendants have been malicious and calculated to injure Plaintiff.  The willful, wanton and malicious nature of Defendants' conduct entitles Plaintiff to an award of Plaintiff's reasonable attorneys' fees and punitive damages against Defendants.

## FIFTH CAUSE OF ACTION
## <u>UNFAIR COMPETITION - COMMON LAW and N.Y. GEN. BUS. LAW § 133</u>

80.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 79 above.

81.     Plaintiff, as a cause of action and ground for relief, alleges that Defendants are engaging in unfair competition and misappropriation in violation of the common law of the State of New York and New York General Business Law § 133.

82.     Defendants have infringed the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Logo and the Quick Draw Word Mark and continue to do so by marketing and/or selling goods, including the Robbery Merchandise and lottery game services, including Fraudulent Lottery Tickets, using the Robbery Logo and the NEW YORK ROBBERY mark.

83.     Defendants' use of colorable imitations of the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Logo and the Quick Draw Word Mark, including the name New York Lottery, misleads consumers in regard to the identity of Defendants by suggesting a relationship, affiliation or sponsorship between Plaintiff and Defendants, when no such relationship, affiliation or sponsorship exists.

84.     Defendants' acts constitute deception, fraud, misrepresentation, or the concealment, suppression or omission of a material fact, such as that Plaintiff and Defendants are not affiliated.

85.     Upon information and belief, Defendants intend to benefit from the goodwill and reputation of Plaintiff and its famous marks, and that others rely upon its unfair methods of competition and unfair or deceptive trade practices.

86.     Defendants' deceptive business practices involve conduct addressed to the market generally and implicate consumer protection concerns because the deceptive practices have caused and continue to cause injury to consumers. Unless Defendants' acts are restrained by this Court,

Defendants' deceptive business practices will continue and the public will continue to suffer great and irreparable injury.

87.     Defendants' acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Plaintiff, or origin, sponsorship, or affiliation of Defendants by Plaintiff.

88.     Defendants' acts have harmed Plaintiff's reputation and have severely damaged Plaintiff's trademarks and goodwill.

89.     Defendants' aforesaid acts constitute passing off, tarnishment, dilution, misappropriation, and misuse of Plaintiff's trademarks, unfair competition, palming-off and passing-off against Plaintiff, and unjust enrichment by Defendants, all in violation of Plaintiff's rights under the common law of New York.

90.     Upon information and belief, Defendants' actions have been willful and deliberate.

91.     Defendants' conduct is causing immediate and irreparable injury to Plaintiff and Plaintiff is entitled to injunctive relief pursuant to New York General Business Law § 133 without requiring proof that any person has in fact been deceived or misled thereby.

92.     Plaintiff has suffered, and continues to suffer, substantial and irreparable injury as a result of Defendants' deceptive business practices and therefore Plaintiff is entitled to injunctive relief under New York common law.

## SIXTH CAUSE OF ACTION

## DECEPTIVE TRADE PRACTICES UNDER N.Y. GEN. BUS. LAW § 349

93.     Plaintiff repeats and reasserts all allegations in Paragraphs 1 through 92 as if they were stated in full herein.

94.     In the course of his business, Defendants have wrongfully and deceptively engaged in consumer-oriented unfair trade practices that are misleading in a material way, and that cause injury to Plaintiff and the public.

95.     Defendants' activities and use of colorable imitations of the Lottery Globe Mark, the Lottery Word Mark, the Quick Draw Logo and the Quick Draw Word Mark misleads consumers in regard to the relationship, affiliation or sponsorship between Plaintiff and Defendants and the origin of Defendants' goods and services.

96.     Defendants' unfair deceptive business practices involve conduct directed at consumers and implicate consumer-protection concerns because the deceptive practices have caused and continue to cause injury to consumers.

97.     Defendants' activities are willful, knowing and have been undertaken in bad faith.

98.     Defendants' activities constitute deceptive acts and practices causing harm and injury to the public at large, as well as to Plaintiff, in violation of New York General Business Law § 349.

99.     Plaintiff has incurred monetary damages in an amount presently unknown to Plaintiff as a result of Defendants' activity. Defendants' willful and/or knowing violations of New York General Business Law § 349 entitle Plaintiff to treble damages.

100.    Defendants' conduct is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation and will continue both to damage Plaintiff and deceive the public unless enjoined by this Court.

101.    Plaintiff is entitled to attorney fees as the prevailing plaintiff pursuant to New York General Business Law § 349(h).

**SEVENTH CAUSE OF ACTION**

**<u>FALSE ADVERTISING UNDER N.Y. GEN. BUS. LAW § 350</u>**

102.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 101 above.

103.    Defendants' advertising and solicitations are false or misleading in a material respect.

104.    Defendants' activities have caused, and continue to cause, harm and injury to consumers, and have significant ramifications for the public at large, in that Defendants' advertising and solicitations are directed to consumers and are materially false and/or misleading.

105.    Defendants' activities are intended to cause confusion and mistake and to deceive consumers and the public at large.

106.    Plaintiff has incurred monetary damages in an amount presently unknown to Plaintiff as a result of Defendants' activity. Defendants' willful and/or knowing violations of New York General Business Law § 350 entitle plaintiff to treble damages pursuant to New York General Business Law § 350-e(3).

107.     Defendants' activities constitute false advertising causing harm and injury to the business and goodwill of Plaintiff and the public at large in violation of New York General Business Law § 350.

108.     Plaintiff is entitled to attorney fees as the prevailing plaintiff pursuant to New York General Business Law § 350-3(3).

## EIGHTH CAUSE OF ACTION
## CANCELLATION OF U.S. REG. NO. 5,340,467

109.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 108 above.

110.     Defendant Peter Artemiev and Defendant Anabelle Eckert currently jointly hold U.S. Trademark Registration No. 5,340,467 for mark NEW YORK ROBBERY covering "Headwear; Hoodies; Jackets; Jerseys; Sweaters; T-shirts; Caps being headwear; Crew neck sweaters; Short-sleeved or long-sleeved t-shirts; Skullies being headwear."

111.     On information and belief, Defendants failed to inform the USPTO of the existence of Plaintiff's senior rights and priority in and to the Lottery Word Mark and the Lottery Globe Mark.

112.     On information and belief, the USPTO reasonably relied on Defendants' omission of this material information in determining to issue this registration.

113.     On information and belief, if the USPTO knew about the Lottery Globe Mark and the Lottery Word Mark, and the famous nature of the same, the USPTO would never have allowed the Robbery Registration to register

114.     Plaintiff is being damaged by Defendants' conduct.

## **DEMAND FOR JURY TRIAL**

115.     Plaintiff hereby demands a trial by jury.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, New York State Gaming Commission, prays for judgment against Defendants granting the Plaintiff:

(A)     A preliminary and final injunction enjoining Defendants, and all persons acting in concert or participation with them or persons acting or purporting to act on their behalf, including but not limited to their officers, directors, stockholders, partners, owners, agents, representatives, employees, attorneys, successors and assigns and any and all persons acting in concert or privity with them, from:

   (1)     using any portion of the Lottery Globe Mark, the Lottery Work Mark, the Robbery Logo, the NEW YORK ROBBERY mark, or any other mark similar thereto as to be likely to cause confusion, mistake, or deception in connection with the source, sponsorship, affiliation or approval of Defendants' goods or services;

   (2)     using any word, term, common name, symbol or device or any combination thereof or any false designation of origin, false or misleading description of fact, that in commercial advertising or promotion misrepresents the nature, characteristics, qualities, sponsorship or affiliation of Defendants' goods and services;

27

(3)     unfairly competing with Plaintiff in any manner whatsoever; and

(5)     that each Defendant be directed to file with this Court and serve upon Plaintiff within 30 days after the service of any injunction ordered in this action a report, in writing, under oath, setting forth in detail the manner and form in which such Defendant has complied with such injunction.

(B)     Pursuant to 15 U.S.C. § 1116, an Order for the recall and destruction of all materials and products within the control of each Defendant, each Defendant's agents or each Defendant's distributors, that in any way falsely advertise the services or products of Defendants, including, without limitation, materials and products containing the word mark NEW YORK ROBBERY and materials and products containing the Robbery Logo;

(C)     Cancellation of U.S. Trademark Registration No. 5,340,467 pursuant to 15 U.S.C. § 1119;

(D)     An accounting and award of Defendants' profits derived by them from any of the wrongful acts complained of herein;

(E)     An accounting and award of Plaintiff's losses incurred as the result of any of the wrongful acts complained of herein;

(F)     An award of statutory damages pursuant to 15 U.S.C. § 1117(d);

(G)     An award of statutory damages pursuant to New York General Business Law § 349(h);

(H)     An award of statutory damages pursuant to New York General Business Law § 350-
e(3);

(I)     An award of treble, increased and/or punitive damages under the Lanham Act,  New
York General Business Law §§ 349(h) and 350-e(3) and as may be available under
any other statute or common law;

(J)     Plaintiff's costs of this action, prejudgment and postjudgment interest;

(K)     Plaintiff's attorneys' fees, including attorneys' fees pursuant 15 U.S.C.  § 1117,
New  York  General  Business  Law  §§ 349(h)  and  350-e(3)  and/or  any  other
provision of New York State law; and

(J)     Such other and further relief against Defendants in favor of Plaintiff as this Court
deems just, equitable and proper.

Dated:  November 2, 2022                 Respectfully submitted,

**s/Brett Hutton**
Brett Hutton, Esq. (*NDNY Bar No. 510995*)
Thomas L. Sica, Esq. (*NDNY Bar No. 520638*)
HESLIN ROTHENBERG FARLEY & MESITI P.C.
5 Columbia Circle
Albany, NY 12203
Telephone: (518) 452-5600
Facsimile:  (518) 452-5579
Email: brett.hutton@hrfmlaw.com
Email: thomas.sica@hrfmlaw.com

*Attorneys for Plaintiff, New York State Gaming
Commission*

29